UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ALMA DORIS SANTOS, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | EP-16-CV-00195-DCG |
| | § | |
| COLEMAN WORLD GROUP, LLC, | § | |
| COLEMAN AMERICAN MOVING | § | |
| SERVICES, INC., and COLEMAN | § | |
| AMERICAN COMPANIES, INC., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendants Coleman World Group, LLC, Coleman

American Moving Services, Inc., and Coleman American Companies, Inc.'s (collectively

"Coleman") "Motion for Summary Judgment" (ECF No. 19) filed on May 3, 2017. Therein,

Coleman requests that the Court grant it summary judgment on all of Plaintiff Alma Doris

Santos' ("Ms. Santos") asserted claims. Ms. Santos asserted wage violation and retaliation

claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and national

origin and color discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e *et seq.*,

and the Texas Commission on Human Rights Act (the "TCHRA"), codified in Chapter 21 of the

Texas Labor Code. For the reasons that follow, the Court **GRANTS IN PART AND DENIES**

**IN PART** Coleman's motion.

## I.  BACKGROUND

Coleman is an established household goods moving and storage company and a provider

of worldwide relocation and transportation services.[1]  Coleman is headquartered in Dothan,

---

[1] Pl.'s Resp. Defs.' Proposed Undisputed Facts ¶ 1 [hereinafter "Pl.'s Resp. Defs.' PUF"], ECF
No. 34.

Alabama, but maintains at least one facility in El Paso, Texas.[2]  Coleman's business in El Paso

focuses on providing moving, relocation, and transportation services primarily to the military and

military families based at and around Fort Bliss.[3]  Coleman's hierarchy in El Paso consists of

administrative and sales employees, drivers, warehouse associates, helpers, and packers reporting

to the General Manager and the Dispatch Supervisor/Operations Manager, who in turn report to

the Regional Vice President for Coleman locations in Texas and Louisiana.[4]

Ms. Santos is a brown-skinned, Hispanic, Mexican-American woman whom Coleman

rehired on June 24, 2014, to work as a non-CDL driver and packer in El Paso.[5]  Ms. Santos had

previously worked for Coleman's affiliate, Allied Van Lines, from 2000 to 2005 and Coleman

from 2005 to 2012 before voluntarily resigning.[6]  As a packer and a non-CDL driver, Ms. Santos

reported to David Buntyn ("Buntyn") and Chris Regan ("Regan"), the two General Managers

during her time at Coleman, and Ed Bashur ("Bashur"), the Dispatch Supervisor/Operations

Manager; in turn, Regan, Bashur, and Buntyn all reported to Joe Heinen ("Heinen"), the

Regional Vice President.[7]  During 2014, there was a transition of management authority from

Buntyn, who was leaving at the end of the year, to Regan, who was to be the new General

---

[2] *Id.* ¶ 2.

[3] *Id.* ¶ 3.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 18; Defs.' Resp. Pl.'s Proposed Undisputed Facts ¶¶ 1, 6, 9 [hereinafter "Defs.' Resp. Pl.'s PUF"], ECF No. 37.

[6] *Id.* ¶ 8.

[7] *Id.* ¶¶ 5, 6.

Manager.[8]  Accordingly, Bashur and Regan were generally responsible for giving Ms. Santos her

work assignments.[9]

According to Heinen, Coleman's policy was to pay its packers and drivers an hourly

rate[10] for the work they did in its warehouse and a rate according to its "hundred-weight scale"[11]

for the shipping assignments outside the warehouse.[12]  In the event that an employee's weekly

earnings under the "hundred-weight scale" did not average the minimum wage, Heinen stated

that Coleman's policy was for it to pay the difference.[13]  Heinen also explained that Coleman's

policy was to give its employees holiday pay when they worked the first scheduled work-day

before the holiday and the first scheduled work-day after the holiday.[14]

After Ms. Santos' rehiring in June 2014, the alleged wrongful conduct began with

Sylinda James, a Caucasian-American packer and non-CDL driver, taking on the additional

---

[8] *Id.* ¶ 2.

[9] *Id.* ¶ 5; Pl.'s Resp. Defs.' PUF ¶ 5.

[10] Ms. Santos' hourly rate for work in the warehouse was $11.00 per hour.  Defs.' Resp. Pl.'s PUF ¶ 9.

[11] According to Coleman's policy, the "hundred-weight scale" calculated the amount owed by multiplying the applicable hundred-weight rate—which is determined by the category of the shipment being handled—by the weight of the shipment; this amount would then be shared by the workers in proportion to their hourly rates.  Defs.' Mot. Summ. J., Ex. C-5.  For example, a 10,000 pound load at a rate of $5.00 per one hundred pounds would result in a total amount owed of $500.  If two workers were dispatched, Worker A making $12.00 per hour and Worker B making $8.00 per hour, Worker A would be owed $300 (60%), and Worker B would be owed $200 (40%).

The Court sustains Ms. Santos' objection to Coleman's "El Paso CWT Pay Rate Effective 2/23/2015" on the grounds of relevance.  Pl.'s Resp. Defs.' PUF ¶ 11; *see also* Defs.' Mot. Summ. J., Ex. C-4.  This policy's effective date is subsequent to Ms. Santos' employment with Coleman ending.  Therefore, this policy is not relevant to the instant case because the policy did not come into effect until after the end of Ms. Santos' employment with Coleman.

[12] *Id.* ¶¶ 10–12.

[13] *Id.* ¶ 15.

[14] *Id.* ¶ 23.

responsibilities of the Quality Control Inspector.[15]  Ms. Santos had requested that Buntyn allow

her to take on those additional responsibilities prior to them being given to Sylinda James.[16]

Further, Ms. Santos' frustrations grew during her time with Coleman because she felt that Regan

was purposefully giving her the lower-paying work assignments.[17]  Her frustration with Coleman

worsened when Regan told Ms. Santos during the week of Thanksgiving that there were no

packing jobs that week in response to her requests for work.[18]  These frustrations led Ms. Santos

to complain to Buntyn and Regan after Thanksgiving that Regan refused to give her any

assignments, which prevented her from receiving holiday pay.[19]  Ms. Santos alleges that Buntyn

told Regan to give her holiday pay for Thanksgiving; Coleman disputes this allegation.[20]

Subsequently, on December 22, 2014, Ms. Santos again complained in a meeting—this

time with Regan and Bashur—that she still had not received holiday pay for Thanksgiving.[21]

From there, Coleman's version of events and Ms. Santos' version of events differ greatly.  Ms.

Santos' alleges that she also complained about not being paid enough for work assignments she

did and not being paid at all for certain jobs.[22]  She further asserts that Regan fired her the next

---

[15] Defs.' Resp. Pl.'s PUF ¶ 12.  There is dispute amongst Coleman and Ms. Santos as to whether this was an actual position or not, but both agree that Sylinda James received additional duties.  *Id.*

[16] *Id.* ¶ 11.

[17] *Id.* ¶¶ 17–18.

[18] *Id.* ¶ 19.

[19] *Id.* ¶ 30.

[20] *Id.*

[21] Defs.' Mot. Summ. J., Ex. B at 112.

[22] *Id.*

day, December 23, 2014, and made a discriminatory comment.[23] Coleman alleges that Ms.
Santos voluntarily resigned from her position on December 22, 2014, and Regan simply accepted
her resignation on December 23, 2014.[24] However, it is undisputed that Ms. Santos'
employment with Coleman ended on December 23, 2014.[25]

Following her separation from Coleman, Ms. Santos filed Charges of Discrimination with
the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission,
Civil Rights Division ("TWC"), on February 2, 2015.[26] Ms. Santos' EEOC Charge alleges that
she was discriminated against on the basis of her national origin and color and retaliated against
by Coleman.[27] Subsequently, the EEOC and TWC issued Ms. Santos notices of her right to sue
on her charges of discrimination and retaliation.[28] Ms. Santos then filed suit in El Paso County
Court at Law No. 3 on May 10, 2016; Coleman removed the cause to this Court on June 13,
2016.[29]

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[23] *Id.* The alleged discriminatory comment was Regan instructing Bashur to "[t]ake [the key]
away from her, that stupid Mexican." *Id.* at 92–93.

[24] Pl.'s Resp. Defs.' PUF ¶¶ 29–31. Coleman states that it believed Ms. Santos resigned her
position when she communicated her dissatisfaction with her employment and stated that if things were
not going to change, she would seek employment elsewhere. Defs.' Mot. Summ. J. at 14.

[25] Pl.'s Resp. Defs.' PUF ¶ 29.

[26] *Id.* ¶ 35; Pl.'s First Am. Compl. at 2, ECF No. 9.

[27] Defs.' Mot. Summ. J., Ex. A at 17 ("Original EEOC Charge").

[28] Pl.'s First Am. Compl. at 3.

[29] Defs.' Not. Removal at 1–4, ECF No. 1.

R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). In deciding whether a genuine dispute as to any material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party" but "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation and internal quotation marks omitted). Instead, the court "only 'give[s] credence to the evidence favoring the nonmovant [and] that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (second alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quotation marks and citation omitted). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial." *LHC Grp.*, 773 F.3d at 694 (internal quotation marks and citation omitted). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 497 n.20 (5th Cir. 2014) (quotation marks and citation omitted).

## III.   DISCUSSION

Ms. Santos asserts wage violation and retaliation claims under the FLSA and national origin and color discrimination and retaliation claims under Title VII and the TCHRA. The Court will address each claim in turn.

### A.   Ms. Santos' FLSA Wage Violation Claims

Ms. Santos contends that Coleman violated the FLSA by not complying with its minimum wage, overtime, and travel time requirements. First, the Court will consider her overtime and travel time violation claims. Subsequently, it will consider her minimum wage violation claim.

#### 1.   *Ms. Santos' Overtime and Travel Time Claims*

Ms. Santos alleges that Coleman violated the FLSA requirements when it failed to pay her for overtime and travel time. Pl.'s Resp. at 16–19. However, Coleman argues that Ms. Santos failed to allege a claim under the FLSA for overtime or travel time in her complaint. Defs.' Reply at 5–7. Ms. Santos stated in her complaint: "Coleman violated the [Fair] Labor Standards Act by not paying Ms. Santos for all of the work she performed and by not paying her at least a minimum wage, in violation of the Fair Labor Standards Act of 1938, as amended." Am. Compl. at 10–11, ECF No. 9. Coleman asserts that the statement in the complaint only sufficiently states a claim for a minimum wage violation under the FLSA. Defs.' Reply at 5–7.

"The FLSA distinguishes between violations of the federal minimum wage (at § 206) and overtime requirements (at § 207) . . . ." *Acosta v. Campos*, No. EP-14-CV-160-PRM, 2014 WL 10178598, at *7 (W.D. Tex. Dec. 17, 2014). A plaintiff must plead the elements of an overtime claim in order to be entitled to relief under the FLSA. *Hernandez v. Praxair Distribution, Inc.*, No. 4:14-CV-01535, 2015 WL 5608233, at *2 (S.D. Tex. Sept. 23, 2015) ("In order to state a claim for unpaid overtime wages, Hernandez must plead (1) he was a nonexempt employee of Defendants; (2) he worked in excess of forty hours per week; and (3) he did not receive minimum wage or overtime compensation."); *Solis v. Time Warner Cable San Antonio, L.P.*, No. 10-CA-0231-XR, 2010 WL 2756800, at *2 (W.D. Tex. July 13, 2010) (explaining that the plaintiff sufficiently alleged the elements of an overtime compensation claim under the FLSA); *Hoffman v. Cemex, Inc.*, No. CIV.A. H-09-3144, 2009 WL 4825224, at *3 (S.D. Tex. Dec. 8, 2009) (explaining the same). *See also Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (listing the elements that an employee must prove for an unpaid overtime compensation claim). Further, the FLSA also distinguishes between travel time and minimum wage violations. *Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 936 (N.D. Tex. 2014) (distinguishing between and discussing "three specific employee rights" under the FLSA: the right to be paid 1) the minimum wage, 2) for travel time, and 3) for overtime). Thus, a plaintiff must plead "sufficient factual allegations to state a claim for failure to pay travel time[.]" *See id.* at 938.

Ms. Santos failed to plead any of the elements to an overtime or travel time claim in her complaint; indeed, her complaint contains no explicit mentions of overtime or travel time compensation to put Coleman on notice that she was alleging those claims. Accordingly, the Court finds that Ms. Santos is not entitled to relief on the overtime and travel time claims she

now asserts. *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

### 2. *Ms. Santos' Minimum Wage Claim*

Ms. Santos alleges that Coleman violated the FLSA by not always paying her at least the minimum wage during her employment with the company. Pl.'s Resp. at 16–19. Coleman disputes Ms. Santos' contention that it failed to pay her the minimum wage at any point during the course of her employment. Defs.' Mot. Summ. J. at 17–18. "The FLSA sets the general national minimum wage at $7.25 per hour." *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015). "Section 17 of the FLSA grants federal district courts jurisdiction to restrain violations of the FLSA, including the [restraint] of any withholding of payment of minimum wages [ ] found to be due to employees." *Donovan v. Varkonyi*, 703 F.2d 555 (5th Cir. 1983) (internal quotation marks omitted) (quoting 29 U.S.C. § 217).

Coleman has submitted evidence of its payroll records that show Ms. Santos' weekly pay from June 24, 2014, through December 23, 2014. Defs.' Mot. Summ. J., Ex. C-6. Coleman's payroll records show that Ms. Santos was paid an average of $11.71 per hour over that period. *See id.* The lowest amount the records show that Ms. Santos was paid per hour over a week during her employment was the national minimum wage of $7.25.[30] *Id.* However, Ms. Santos has offered evidence indicating that she was not paid the minimum wage during at least one week of her employment with Coleman. Pl.'s Resp., Ex. A at 37, 39–40 (showing that Ms.

---

[30] In congruence with other Fifth Circuit district courts, the Court is analyzing Ms. Santos' claim under the FLSA using a weekly wage standard (determining the rate by dividing the week's pay by the total hours worked that week). *See Magana v. Coleman World Grp., LLC*, No. EP-16-CV-196-DB, 2017 WL 3841887, at *6–7 (W.D. Tex. Aug. 31, 2017) (discussing the weekly wage standard and collecting cases applying the standard).

Santos worked in excess of 40 hours in a week where she was only paid $5.39).  Further, Ms. Santos declares under oath that Coleman did not pay her the minimum wage during certain weeks while she was employed there.  Pl.'s Resp., Ex. A, Santos Decl. ¶¶ 35, 45, 47–48.  Thus, the Court, drawing all reasonable inferences in favor of Ms. Santos, finds that there is a genuine dispute of material fact as to whether Ms. Santos was paid the minimum wage at all times during her employment with Coleman.  Accordingly, the Court DENIES summary judgment on Ms. Santos' FLSA minimum wage violation claim.

## B.  Ms. Santos' Other Claims

Ms. Santos alleges that Coleman violated Title VII and the TCHRA by retaliating against her for engaging in a protected activity and by discriminating against her on the basis of her national origin and color.[31]  Further, Ms. Santos asserts that Coleman violated the FLSA by retaliating against her for engaging in protected conduct.

As an initial matter, Ms. Santos' Title VII and TCHRA claims are both analyzed under Title VII precedent.  *See Khalfani v. Balfour Beatty Cmtys., LLC*, Civ. A. No. EP-12-CV-00422-DCG , 2014 WL 12530941, at *3 (W.D. Tex. Feb. 12, 2014) (collecting cases holding same).  Further, the tripartite burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973) applies to each of the causes of action because Ms. Santos does not have direct evidence of discrimination.  Pl.'s Resp. at 3–4; *see also Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) ("Although *McDonnell Douglas* was a Title VII case, the burden-shifting framework established therein has been adapted and applied to cases under . .

---

[31] Ms. Santos treats her color discrimination and national origin discrimination claims as one claim, so the Court will do the same for the purposes of this motion.  *See* Pl.'s First Am. Compl. at 10; Pl.'s Resp. at 3–11.

. the FLSA."). Accordingly, after laying out the *McDonnell Douglas* burden-shifting framework,

the Court will address each cause of action in succession.

### 1. The McDonnell Douglas Burden-Shifting Framework

When circumstantial evidence is used to prove discrimination, courts apply the

*McDonnell Douglas* burden-shifting framework. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d

893, 896 (5th Cir. 2002) ("If the plaintiff produces only circumstantial evidence of

discrimination, the burden-shifting analysis set forth in *McDonnell Douglas* . . . guides our

inquiry."). Under this framework:

> First, the plaintiff must establish a prima facie case of discrimination [or
> retaliation]. Second, the employer must respond with a legitimate,
> nondiscriminatory [or nonretaliatory] reason for its decision. This burden on the
> employer is only one of production, not persuasion, involving no credibility
> assessments. Third, if the employer carries its burden, the mandatory inference of
> discrimination [or retaliation] created by the plaintiff's prima facie case drops out
> of the picture and the fact finder must decide the ultimate question: whether the
> plaintiff has proven intentional discrimination [or retaliation.]

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal citations and

quotation marks omitted). The elements of the prima facie case depend on the claim asserted.

*See McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007) (*per curiam*) (listing the

elements for a prima facie case of retaliation); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,

245 F.3d 507, 512–13 (5th Cir. 2001) (listing the elements of a prima facie case of

discrimination). If the defendant meets its burden of production after the plaintiff establishes a

prima facie case, then the plaintiff must "offer sufficient evidence to create a genuine issue of

material fact that [ ] the employer's reason is a pretext[.]" *Daniel v. Universal ENSCO, Inc.*, 507

F. App'x 434, 437–38 (5th Cir. 2013) (*per curiam*) (quoting *Burrell v. Dr. Pepper/Seven Up

Bottling Grp., Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007) (internal quotation marks omitted)).

*See also Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (In the discrimination

context, "[t]he plaintiff . . . must [ ] 'produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination [to avoid summary judgment].'"); *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (In the retaliation context, "the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would [] have taken the action 'but for' the protected activity [to avoid summary judgment].").

### 2. *Ms. Santos' National Origin and Color Discrimination Claims*

Ms. Santos alleges that Coleman discriminated against her on the basis of her national origin and color in violation of Title VII and the TCHRA. Coleman disputes these allegations. Further, it argues that some of Ms. Santos' claims are time-barred, and Ms. Santos has failed to exhaust her administrative remedies with regard to certain allegations she made. As threshold matters, the Court will address Coleman's statute of limitations and exhaustion arguments. Thereafter, the Court will turn to Ms. Santos' national origin and color discrimination claims.

### (a) The 300-Day Statute of Limitations Bars Some of Ms. Santos' Claims

Coleman urges the Court to grant summary judgment for claims that took place prior to April 8, 2014, as barred by the 300-day statute of limitations. Defs.' Mot. Summ. J. at 5–6. Coleman maintains that, although Ms. Santos testified about the denial of promotions to a secretary position and a sales position during her first term of employment with Coleman, *id.* at 6 (citing Defs.' Mot. Summ. J., Ex. B at 12–15), two years elapsed before Ms. Santos filed her EEOC Charge, *id.* Therefore, Coleman argues that any claims based on these denied promotions are not actionable as a matter of law. Ms. Santos does not oppose Coleman's Motion on this ground. *See generally* Pl.'s Resp. at 1–20.

The Supreme Court has held that discrete discriminatory acts are time-barred if the plaintiff does not file an EEOC charge within 300 days of their occurrence. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300–day time period after the discrete discriminatory act occurred."). The Supreme Court defined "easy to identify" discrete discriminatory acts as "termination, failure to promote, denial of transfer, or refusal to hire[.]" *Id.* at 114. Here, Ms. Santos filed her EEOC Charge on February 2, 2015. *See* Original EEOC Charge. The promotions to the secretary and the sales positions, which she claims were denied to her, occurred during her first term of employment with Coleman, which ended in 2012. Defs.' Resp. Pl.'s Proposed Undisputed Facts ¶ 8. As failure to promote claims, both qualify as discrete discriminatory acts. Therefore, the Court finds that Ms. Santos' failure to promote claims from her first term of employment with Coleman fall outside the 300-day statute of limitations and are time-barred. Further, the Court finds that Coleman's Motion should also be granted because Ms. Santos fails to respond to this issue; thus, the Court deems it unopposed. *See Johnson v. Miss. Power Co.*, Civ. A. No. 1:14-CV-226-KS-MTP, 2014 WL 5847521, at *2 (S.D. Miss. Nov. 12, 2014) (granting summary judgment on disparate treatment claim that was not exhausted and finding that the plaintiff abandoned his claim by failing to brief it); Local Court Rule CV-7(e)(2) (stating that if no response is filed within the prescribed time period, the court may grant the motion as unopposed). Thus, Ms. Santos' failure to promote claims that predate April 8, 2014, are barred by the 300-day statute of limitations. Accordingly, the Court GRANTS summary judgment in favor of Coleman as to any claims based upon Ms. Santos' denial of promotions to a secretary position and a sales position during her first period of employment with Coleman.

### (b) Ms. Santos Exhausted Her Administrative Remedies

Coleman further asserts that Ms. Santos failed to exhaust her administrative remedies with respect to alleged discriminatory statements made by Coleman about Ms. Santos' national origin. Defs.' Mot. Summ. J. at 9–11; *see also* Defs.' Mot. Summ. J., Ex. B at 11–12, 16, 92–93.[32] Coleman contends that Ms. Santos only presented factual allegations relating to discrimination and retaliation based on her compensation, job assignments, denial of promotions, and separation for complaining about discriminatory practices affecting her pay and never presented these discriminatory statements to the EEOC. *Id.* at 9–10 (citing Original EEOC Charge; Defs.' Mot. Summ. J., Ex. D ("Am. EEOC Charge"); First Am. Compl.); *id.* at 10. Ms. Santos does not oppose Coleman's Motion on this ground. *See generally* Pl.'s Resp. at 1–20.

"Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC[.]'" *Filer*, 690 F.3d at 647 (quoting *Pacheco v. Mineta*, 448 F.2d 783, 789 (5th Cir. 2006)). However, the Fifth Circuit specified that:

> Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.

*Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983). This inquiry asks the Court to "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco*, 448 F.2d at 789. As "*Fellows* make clear, this rule protects unlettered lay persons making

---

[32] The alleged statements are: 1) "You're not qualified because you're Mexican;" 2) "You should clean the bathroom because you're Mexican;" and 3) "Take it away from her, that stupid Mexican." Defs.' Mot. Summ. J., Ex. B at 11, 16, 93.

complaints without legal training or the assistance of counsel." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

Ms. Santos' EEOC Charge alleges national origin and color discrimination resulting in her receiving less desirable and lower-paying jobs, being passed over for promotions, and being ultimately discharged. Original EEOC Charge. These alleged discriminatory statements have a direct connection to her allegations in her EEOC Charge that Coleman gave her less desirable work assignments, paid her less, and discharged her on the basis of her national origin and color. While the Court has the discretion to grant Coleman's Motion as unopposed,[33] the Court declines to do so on this point and finds that a reasonable jury could conclude that the alleged discriminatory statements could "reasonably be expected to [have] grow[n] out of the charge of discrimination[.]" *Filer*, 690 F.3d at 647 (quoting *Pacheco*, 448 F.2d at 789). Accordingly, the Court DENIES summary judgment as to the claims based upon alleged discriminatory statements made by Coleman about Ms. Santos' national origin.

### (c) Analysis of Ms. Santos' National Origin and Color Discrimination Claims

Central to Ms. Santos' national origin and color discrimination claims are the adverse employment actions taken against her by Coleman. Ms. Santos contends that the adverse employment actions were: 1) Coleman denying her a promotion to Quality Control Inspector; 2) Coleman giving her lower-paying assignments, denying her work assignments, and not compensating her for all of the work she performed; and 3) Coleman discharging her. The Court will address these actions in turn. However, as a threshold matter, the Court notes that adverse employment actions in Title VII discrimination cases are subject to the "ultimate employment

---

[33] *See Johnson*, 2014 WL 5847521, at *2 (granting summary judgment on disparate treatment claim that was not exhausted and finding that the plaintiff abandoned his claim by failing to brief it); Local Court Rule CV-7(e)(2) (stating that if no response is filed within the prescribed time period, the court may grant the motion as unopposed).

decisions" test. *McCoy*, 492 F.3d at 559–60 ("We have historically held that . . . '[a]dverse

employment actions include only ultimate employment decisions such as hiring, granting leave,

discharging, promoting, or compensating' . . . . [O]ur precedent recognizing only 'ultimate

employment decisions' as actionable adverse employment actions remains controlling for Title

VII *discrimination* claims" (emphasis in original)).

  *i. The Denial of the Promotion to Quality Control Inspector*

  Ms. Santos alleges that Coleman denied her a promotion to Quality Control Inspector in

2014 on the basis of her national origin and skin color. Pl.'s Resp. at 5. Coleman avers that

there was no promotion, so Ms. Santos could not have been denied a promotion on the basis of

her national origin or skin color. Defs.' Mot. Summ. J. at 6–7. Further, Coleman argues that

even if the Court finds that Ms. Santos was denied a promotion, she cannot prove that she was

clearly better qualified than Sylinda James, the woman she alleges Coleman promoted to that

position. *Id.* at 8.

  The prima facie case for a failure to promote claim under the *McDonnell Douglas*

framework is: (1) She belongs to a protected class; (2) she applied for and was qualified for a

position for which applicants were being sought; (3) she was rejected; and (4) a person outside of

her protected class was hired for the position. *Burrell v. Dr. Pepper/Seven Up Bottling Grp.,*

*Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). There is no dispute that Ms. Santos is a member of a

protected class. *See* Pl.'s Resp. at 5 ("[Ms. Santos] is an [sic] Hispanic, Latin, Mexican-

American with brown colored skin."). The dispute here is whether or not an actual opportunity

for a promotion existed.

  Coleman claims that Sylinda James was never promoted over Ms. Santos because James

received "no change in benefits, compensation, title, or opportunities for advancement" during

Ms. Santos' term of employment with Coleman. Defs.' Mot. Summ. J. at 7. Indeed, James was

paid an hourly rate of $10.50 compared to Ms. Santos' hourly rate of $11.00 during the term of

Ms. Santos' employment with Coleman. *Id.* Furthermore, even Ms. Santos admits that Coleman

management never directly stated that James was promoted. *Id.*, Ex. B at 68. Accordingly, the

Court finds that James taking on the duties of the Quality Control Inspector was not a promotion.

Ms. Santos responds that even if Quality Control Inspector was not a promotion, she can

still recover for failure to transfer because it is an objectively better position. Pl.'s Resp. at 6.

> [T]he denial of a transfer *may* be the objective equivalent of the denial of a
> promotion, and thus qualify as an adverse employment action, even if the new
> position would not have entailed an increase in pay or other tangible benefits; if
> the position sought was objectively better, then the failure to award the position to
> the plaintiff can constitute an adverse employment action.

*Alvarado v. Texas Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) (emphasis in original). In

*Alvarado*, the Fifth Circuit articulated a number of factors to consider in determining whether the

new position is objectively better: "whether the position[ ] entails an increase in compensation or

other tangible benefits; provides greater responsibility or better job duties; provides greater

opportunities for career advancement; requires greater skill, education, or experience; is obtained

through a complex competitive selection process; or is otherwise objectively more prestigious."

*Id.* Further, the *Alvarado* panel stated that "[t]his is an objective inquiry; neither the employee's

subjective impressions as to the desirability of the new position nor the employee's idiosyncratic

reasons for preferring the new position are sufficient to render the position a promotion." *Id.*

Ms. Santos asserts that the Quality Control Inspector did not have to do the physically-

arduous work that other packers did, received greater responsibility, and was a more prestigious

position. Pl.'s Resp. at 8. Ms. Santos further explains that she preferred the duties of Quality

Control Inspector because she believed the Quality Control Inspector did not have to do packing

or loading work. *Id.* Coleman, on the other hand, claims that James merely took on the Quality Control Inspector duties in addition to her other responsibilities as a packer. Defs.' Mot. Summ. J. at 7. Ms. Santos has failed to provide evidence beyond her personal reasons for preferring the Quality Control Inspector duties and her subjective impressions that those duties are desirable. To create a genuine issue of material fact, Ms. Santos is required to proffer objective evidence that the Quality Control Inspector duties were superior to her own position; she has failed to do so. Thus, Ms. Santos has failed to establish a prima facie case for failure to promote, and the Court need not determine whether Ms. Santos could prove that she was clearly better qualified than Sylinda James. *See Warren v. City of Tupelo Mississippi*, 332 F. App'x 176, 181 (5th Cir. 2009) (*per curiam*) ("In a promotion discrimination claim, a plaintiff may rebut a defendant's showing by providing evidence that he was 'clearly better qualified' than the employee selected for the position at issue." (internal quotation marks and citations omitted)).

Therefore, Coleman's failure to promote Ms. Santos to Quality Control Inspector does not constitute an adverse employment action sufficient to establish a claim for national origin and color discrimination. Accordingly, the Court GRANTS summary judgment in favor of Coleman on Ms. Santos' national origin and color discrimination claim arising out of Coleman's alleged failure to promote her.

    *ii. Lower-Paying Assignments, Denial of Work Assignments, and Failure to Compensate*

Ms. Santos contends that Coleman gave her lower-paying assignments, denied her work assignments during certain periods in her employment, and failed to pay her for work on the basis of her national origin and color. Pl.'s Resp. at 9–11. Ms. Santos argues that the lower-paying, low-weight delivery jobs were given to the Mexican-American employees, such as her, rather than the white employees. *Id.* at 10. Coleman disputes Ms. Santos' allegations on two

grounds: 1) Ms. Santos' allegations do not qualify as adverse employment actions, and 2) the

fluctuations in Ms. Santos' assignments reflect the realities of Coleman's seasonal fluctuations in

business. Defs.' Mot. Summ. J. at 11.

Ms. Santos' alleged adverse employment actions must meet the "ultimate employment

decisions" test. *See McCoy, supra*, 492 F.3d at 559–60. *See also Hernandez v. Crawford Bldg.*

*Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (*per curiam*) (collecting cases where the

Fifth Circuit found that the "ultimate employment decisions" test was satisfied and cases where it

found the test was not satisfied). Allegations that the plaintiff received less favorable work

assignments than other employees are insufficient to qualify as an adverse employment action

because it fails to satisfy the "ultimate employment decisions" test. *Ellis v. Principi*, 246 F.

App'x 867, 870 (5th Cir. 2007) (*per curiam*). Further, the Fifth Circuit has cautioned against

transforming every trivial personnel action that an employee did not like into the basis of a

discrimination suit. *Washington v. Veneman*, 109 F. App'x 685, 689 (5th Cir. 2004) (*per curiam*)

("To find otherwise would transform 'every trivial personnel action that an irritable ... employee

did not like [into the] basis of a discrimination suit. The Equal Employment Opportunity

Commission, already staggering under an avalanche of filings too heavy for it to cope with,

would be crushed, and serious complaints would be lost among the trivial.'" (ellipses and

brackets in original) (quoting *Burger v. Cent. Apartment Mgmt.*, 168 F.3d 875, 879 (5th Cir.

1999) (*per curiam*)).

Ms. Santos' claim that Coleman gave her lower-paying assignments is an example of a

personnel action that falls more towards the trivial side. Her essential complaint is that she

received inferior jobs that resulted in her being paid less. However, "undesirable work

assignments are not adverse employment actions." *Mylett v. City of Corpus Christi*, 97 F. App'x

-19-

473, 476 (5th Cir. 2004) (*per curiam*) (internal quotation marks omitted).  Further, an adverse

employment action must have more than a tangential effect upon an ultimate employment

decision for it to past the muster of the "ultimate employment decisions" test.  *Brooks v.*

*Firestone Polymers, L.L.C.*, 640 F. App'x 393, 397 (5th Cir. 2016) (*per curiam*).  Ms. Santos

merely complains of receiving undesirable work assignments that tangentially affected her

compensation.

Therefore, Ms. Santos' allegation that Coleman assigned her less desirable and lower-

paying work assignments does not constitute an adverse employment action sufficient to

establish claims for national origin and color discrimination because it does not satisfy the

"ultimate employment decisions" test.  Accordingly, the Court GRANTS summary judgment in

favor of Coleman on Ms. Santos' national origin and color discrimination claim arising out of

Coleman allegedly assigning Ms. Santos less desirable and lower-paying work assignments.

Conversely, Ms. Santos' other claims—that she was denied work assignments during the

week of Thanksgiving and was not compensated for all of the work she did while at Coleman—

do implicate the ultimate employment decision of compensating an employee.  *See, e.g., Mota v.*

*Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 521 (5th Cir. 2001) (concluding that the

defendant's refusal to pay a stipend constituted an ultimate employment decision).  Ms. Santos

has introduced evidence that Coleman has not compensated her for all her work.  Pl.'s Resp., Ex.

A at 37, 39–40 (showing that Ms. Santos worked in excess of 40 hours in a week where she was

only paid $5.39); Pl.'s Resp., Ex. A, Santos Decl. ¶¶ 35, 45, 47–48 (declaring under oath that

Coleman failed to pay her for work she did during certain weeks of her employment).  Moreover,

Ms. Santos has offered evidence showing that Regan did deny her work assignments during the

week of Thanksgiving.  Pl.'s Resp., Ex. A at 19–22 (providing text messages showing Regan

telling Ms. Santos "Nope zero packing this week" in response to her request for work on
November 24, 2014); Pl.'s Resp., Ex. A, Santos Decl. ¶ 33.  Therefore, the Court finds that there
is a genuine issue of material fact as to whether Ms. Santos suffered adverse employment actions
with regard to Coleman's alleged denial of work assignments and failure to compensate her for
her work.

Nonetheless, Ms. Santos has not offered evidence demonstrating that others outside her
protected class were treated more favorably during the week of Thanksgiving with regard to
work assignments.  *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017)
("Pursuant to this framework, the initial burden rests with the employee to produce evidence that
he: (1) is a member of a protected class, (2) was qualified for the position that he held, (3) was
subject to an adverse employment action, and (4) *was treated less favorably than others similarly
situated outside of his protected class.*" (emphasis added)).  Therefore, Ms. Santos is unable to
establish a prima facie case for her claim that she was denied work assignments during the week
of Thanksgiving on the basis of her national origin and color.  Accordingly, the Court GRANTS
summary judgment in favor of Coleman on Ms. Santos' national origin and color discrimination
claim arising out of Coleman denying Ms. Santos work assignments during the week of
Thanksgiving.

With regard to Ms. Santos' claim that she was not paid for all of the work she performed,
Ms. Santos has offered Sylinda James, a Caucasian-American coworker, as a comparator for the
"similarly situated" prong.  Pl.'s Resp. at 11.  "The 'similarly situated' prong requires a Title VII
claimant to identify at least one coworker outside of [her] protected class who was treated more
favorably 'under nearly identical circumstances.'"  *Alkhawaldeh*, 851 F.3d at 426.  Furthermore,
the Fifth Circuit, in defining "under nearly identical circumstances," stated:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

In the instant case, Coleman has argued that Ms. Santos and Sylinda James had the same job, responsibilities, and supervisors. Defs.' Mot. Summ. J. at 7. There is no evidence before the Court that indicates that the violation histories of Ms. Santos and Sylinda James were incomparable. Thus, a reasonable jury could find that Sylinda James is a similarly situated employee under nearly identical circumstances outside of Ms. Santos' protected class. Moreover, Ms. Santos has offered evidence indicating that she was not paid for some of the work she performed for Coleman. Coleman's payroll records show that Sylinda James was compensated each week during the time her employment overlapped with Ms. Santos' employment.[34] Pl.'s Resp., Ex. E at 48–53. Furthermore, Coleman has not asserted that it failed to pay Sylinda James during that period. Therefore, the Court finds that there is a genuine issue of material fact as to whether Coleman treated Ms. Santos less favorably than Sylinda James.

In sum, there are triable fact questions about the elements of the prima facie case for national origin and color discrimination arising out of Coleman's alleged failure to pay Ms. Santos for all of the work she performed. Nonetheless, Coleman could still prevail if it articulates a legitimate, nondiscriminatory reason for its decision, and Ms. Santos then fails to show that the reason is pretextual. *Russell, supra*, 235 F.3d at 222. Coleman has not offered any reason for why it might have failed to pay Ms. Santos for all of the work she performed.

---

[34] Indeed, Coleman paid Sylinda James an average of $16.72 per hour over this period of time. Pl.'s Resp., Ex. E at 48–53. This exceeds the $11.71 per hour average that Coleman alleges it paid Ms. Santos over the same period of time. Defs.' Mot. Summ. J., Ex. C-6.

Accordingly, the Court DENIES summary judgment on Ms. Santos' national origin and color

discrimination claim arising out of Coleman's alleged failure to compensate Ms. Santos for all of

the work she performed.

   *iii. The Discharge of Ms. Santos*

   Finally, Ms. Santos asserts that Coleman discharged her on the basis of her national

origin and color. Pl.'s Resp. at 12; Pl.'s Brief at 2, ECF No. 64. Ms. Santos contends that

General Manager Regan's statement of "Take it away from her, that stupid Mexican"

immediately following her discharge is circumstantial evidence of discriminatory animus on the

part of the person who was primarily responsible for her discharge. Pl.'s Brief at 2. Coleman

argues that Ms. Santos was never discharged; rather, she voluntarily resigned her employment.

Defs.' Mot. Summ. J. at 14.

   A prima facie case for a discriminatory discharge under *McDonnell Douglas* requires a

showing that:

> [T]he plaintiff (1) is a member of a protected group; (2) was qualified for the
> position at issue; (3) was discharged or suffered some adverse employment action
> by the employer; and (4) was replaced by someone outside his protected group or
> was treated less favorably than other similarly situated employees outside the
> protected group.

*McCoy*, 492 F.3d at 556. The parties do not dispute that Ms. Santos is a member of a protected

group and was qualified for her position. There is, however, dispute over the third and fourth

elements.

   Coleman asserts that Ms. Santos voluntarily resigned her employment, while Ms. Santos

alleges that Coleman discharged her. Ms. Santos' version of events is that on December 23,

2014, one day after she complained to Regan about not being paid for Thanksgiving, being

undercompensated for her work, and not being paid at all for certain assignments, Regan handed

her a termination report indicating that she resigned. Pl.'s Resp. at 12. Following Ms. Santos'

protest that she had not resigned, Regan and Bashur, who was also present at the meeting, told

her that she was fired. *Id.* Regan then instructed Bashur to take the key for the gate away from

Ms. Santos and called her a "stupid Mexican." Defs.' Mot. Summ. J., Ex. B at 92–93. On the

other hand, Coleman's version of events is that on December 22, 2014, Ms. Santos

communicated her dissatisfaction with her employment with Coleman and stated that if things

were not going to change, she would seek employment elsewhere. Defs.' Mot. Summ. J. at 14.

Based on her statements, Coleman believed that she resigned her employment, and Coleman

accepted this resignation on December 23, 2014. *Id.* Resolution of this dispute is properly

within the province of the trier of fact; therefore, summary judgment is inappropriate. *See*

*Mendoza v. City of Palacios*, No. 3:11-CV-390, 2013 WL 3148667, at *4 (S.D. Tex. June 19,

2013) (noting that the supervisor's and employee's conflicting accounts of the events that led to

the employee's resignation constituted a factual dispute that alone may be enough to get past

summary judgment). *See also McMann v. Greystar Mgmt. Servs., LP*, No. 1:12-CV-909, 2013

WL 6243847, at *4 (W.D. Tex. Dec. 2, 2013) (holding that the factual dispute regarding the

account of the circumstances surrounding the employee's resignation is "enough to demonstrate

a genuine dispute of material fact, making summary judgment inappropriate"). Therefore, the

Court finds that there is a genuine issue of material fact as to whether or not Coleman discharged

Ms. Santos.

Next, Ms. Santos must establish that she was replaced by someone outside her protected

group or was treated less favorably than other similarly situated employees outside her protected

group. *McCoy*, 492 F.3d at 556. Neither Coleman nor Ms. Santos has introduced any evidence

showing who replaced Ms. Santos. However, the evidence offered supports a finding of a

genuine issue of material fact that Ms. Santos was treated less favorably than similarly situated employees outside of her protected group. The evidence gives rise to an inference that those employees outside of Ms. Santos' protected group in similar positions retained their jobs. *See Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990) ("Because this case involves choosing employees to discharge with no plan to replace them, the fourth element of the prima facie case is, more appropriately, that after Vaughn's discharge others who were not members of the protected class remained in similar positions."). Therefore, the Court finds that there is a genuine issue of material fact as to whether Ms. Santos was treated less favorably than other similarly situated employees outside her protected group.

Consequently, the genuine issues of material fact regarding the elements of the prima facie case for national origin and color discrimination shift the burden to Coleman. Coleman can still prevail if it provides a legitimate, nondiscriminatory reason for its decision, and Ms. Santos cannot show that the reason is pretextual. *Russell*, *supra*, 235 F.3d at 222. Nevertheless, Coleman has not articulated any reason for its discharge of Ms. Santos. *Cf. McMann*, 2013 WL 6243847, at *5 (noting that the employer contends that "[the employee] voluntarily resigned, but argues alternatively that if it did discharge [him], that discharge was proper based on [his] failure to secure a trash trailer that was ultimately stolen, as well as his other prior disciplinary actions"). Accordingly, the Court DENIES summary judgment on Ms. Santos' national origin and color discrimination claim arising out of Coleman's alleged discriminatory discharge.

### 3. *Ms. Santos' Title VII and TCHRA Retaliation Claims*

Ms. Santos' Title VII and TCHRA retaliation claims arise out of her alleged discharge from Coleman on December 23, 2014. Pl.'s Resp. at 12–13. The elements to a Title VII retaliation claim under the *McDonnell Douglas* burden-shifting framework are: (1) She

participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556–57.

First, Ms. Santos must prove that she engaged in a protected activity under Title VII. Under Title VII's anti-retaliation provision, "protected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter,' or (2) 'ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (alterations in original) (quoting 42 U.S.C. § 2000e-3(a)). The first of these is known as the "opposition clause," the second as the "participation clause." *Id.* At issue here is the opposition clause. While opposition to discrimination need not be in a formal written form, the opposition still must reference discrimination or another unlawful employment activity. *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 329 (5th Cir. 2013) (*per curiam*) ("Although Rodriquez is correct that '[o]pposition to discrimination ... need not be in formal written form,' her internal complaints are not protected activities because they did not reference discrimination or any other unlawful employment activity."). Moreover, a plaintiff need not prove that the defendant committed any unlawful employment practice; rather, a plaintiff only needs to show that she had a "reasonable belief" that the employer was engaged in unlawful employment practices. *Parker v. State of Louisiana Dep't of Educ. Special Sch. Dist.*, 323 F. App'x 321, 329 (5th Cir. 2009) (*per curiam*); *White v. Goodyear Tire*, 96 F.3d 1444 (5th Cir. 1996) (*per curiam*); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981).

Ms. Santos claims, and Coleman does not contest, that two informal complaints she lodged with Coleman management constituted protected activity. *See generally* Def.'s Mot. Summ. J. at 15–17. In her first informal complaint, she told Coleman management that only white employees were assigned work during the week of Thanksgiving, entitling only them to holiday pay. Pl.'s Resp. at 12. After Coleman management allegedly offered to pay her and others holiday pay for the Thanksgiving holiday following her first complaint, Ms. Santos complained again to Coleman management that she had still not received any holiday pay on December 22, 2013. *Id.*

After establishing that she participated in a protected activity, Ms. Santos must next prove that she was subject to an adverse employment action. Ms. Santos asserts that she was subject to an adverse employment action when Coleman discharged her. As previously discussed, Ms. Santos' version of events differs greatly from Coleman's version of events. If Coleman did discharge Ms. Santos, this would qualify as an adverse employment action. *See, e.g.*, *McCoy*, 492 F.3d at 559–60. Accordingly, there is a genuine dispute of material fact as to whether Ms. Santos was subject to an adverse employment action.

The final element of the prima facie case is whether there is a casual connection between the protected activity and the adverse employment action. Ms. Santos must show that there is a casual connection between her complaints to Coleman management and her discharge. "[C]lose timing between an employee's protected activity and an adverse action [] may provide the causal connection required to make out a prima facie case of retaliation." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (internal quotation marks omitted) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis omitted)). Thus, temporal proximity can be enough to provide the causal link needed to establish a prima facie case of retaliation.

Here, Coleman allegedly discharged Ms. Santos one day after she renewed complaints about not being paid for the Thanksgiving holiday due to her belief that she was not assigned work that week on the basis of her national origin and skin color. Pl.'s Resp. at 12. The Fifth Circuit has found that four months can be sufficiently close for the purposes of the "causal link" element. *Feist*, 730 F.3d at 454 ("This Court has found, for example, that 'a time lapse of up to four months' may be sufficiently close" (citing to *Evans*, 246 F.3d at 354)). Ms. Santos' two complaints at issue here occurred less than a month before her discharge and the day before her discharge. Pl.'s Resp. at 12. Further, Regan's discriminatory comment after her discharge only adds to the strong evidence of a causal link. *See* Defs.' Mot. Summ. J., Ex. B at 92–93. Therefore, the Court finds that there is a genuine issue of material fact regarding the causal link between Ms. Santos' complaints and Coleman allegedly discharging her.

Thus, there are factual questions surrounding the elements of the prima facie case for Title VII retaliation that cause the burden to shift to Coleman. As stated previously, Coleman can prevail if it proffers a legitimate, non-retaliatory reason for its decision, and Ms. Santos cannot show that the reason is pretextual. *Russell*, *supra*, 235 F.3d at 222. However, Coleman has failed to do so. Accordingly, the Court DENIES summary judgment on Ms. Santos' Title VII and TCHRA retaliation claims arising out of Coleman's alleged retaliatory discharge.

### 4. *Ms. Santos' Retaliation Claim Under the FLSA*

Ms. Santos asserts a retaliation claim under the FLSA. This claim arises out of Ms. Santos' alleged discharge from Coleman on December 23, 2014. Pl.'s Resp. at 19–20. The elements to a FLSA retaliation claim under the *McDonnell Douglas* burden-shifting framework are: "(1) participation in protected activity under the FLSA; (2) an adverse employment action;

and (3) a causal link between the activity and the adverse action." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

First, Ms. Santos must establish that she engaged in a protected activity under the FLSA. The FLSA provides that it is unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding[.]" 29 U.S.C. § 215(a)(3). The Fifth Circuit "allows an informal, internal complaint to constitute protected activity under Section 215(a)(3), because it [] captures the anti-retaliation goals of that section." *Hagan*, 529 F.3d at 624.

However, the informal complaint must concern some violation of law. *Id.* at 626 ("For instance, as the district court also noted, not all abstract grumblings or vague expressions of discontent are actionable as complaints . . . . It is clear these cases require the informal complaint to concern some violation of law." (internal quotation marks omitted)). *See also Hernandez v. Praxair Distribution, Inc.*, No. 4:14-CV-01535, 2015 WL 5608233, at *2 (S.D. Tex. Sept. 23, 2015) ("The employee's complaint must concern a violation of law, and it must be framed in terms of the possible illegality of the action which the employer has taken."). "To fall within the scope of the [anti-retaliation] provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) (elaborating that "[t]his standard can be met, however, by oral complaints, as well as by written ones"). Further, "[t]he FLSA does not require that a plaintiff successfully prove a claim [ ] under the FLSA, but merely that the plaintiff prove [she] was engaged in a protected activity." *Little v. Tech. Specialty Prod., LLC*, 940 F. Supp. 2d

460, 478 (E.D. Tex. 2013). *See also Marcotte v. City of Rochester*, 677 F. App'x 723, 726 (2d

Cir. 2017) ("It is possible to state an anti-retaliation claim under the FLSA without proving an

actual violation of the FLSA."); *Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999)

("Congress [ ] wanted to encourage reporting of suspected violations by extending protection to

employees who filed complaints, instituted proceedings, or indeed, testified in such proceedings,

as long as these concerned the minimum wage or maximum hour laws. To enjoy those

protections the conduct at issue must be under or related to those laws. There is no requirement

that those laws must actually be violated. It is sufficient that the plaintiff had a good-faith belief

that they might be violated. No further requirements are implied by the law." (internal quotation

marks omitted)); *Colvin v. Volusion, Inc.*, No. A-17-CV-139-LY, 2017 WL 2805010, at *4

(W.D. Tex. June 28, 2017).

 Ms. Santos claims that she complained to Regan and Bashur on the day before her

termination that she was not being paid enough and was not paid for certain jobs. Pl.'s Resp. at

19; Defs.' Mot. Summ. J., Ex. B at 111–114. Coleman asserts that Ms. Santos' complaints were

not sufficient to constitute protected activity because they were not framed in terms of possible

illegality. Defs.' Mot. Summ. J. at 18–19. Ms. Santos has introduced sufficient evidence to

survive a summary judgment motion on whether her complaints constituted protected activity.

Her complaints to her supervisors, Bashur and Regan, informed them of her good-faith belief

that she was not receiving adequate compensation. *See Alvarez v. Amb-Trans Inc.*, No. SA-11-

CV-179-XR, 2012 WL 4103876, at *3–4 (W.D. Tex. Sept. 17, 2012) (finding that two

employees complaining about inadequate pay to supervisors was sufficient to constitute

protected activity). Ms. Santos' complaints made clear to Coleman that she felt she was not

being paid enough for the work she did. This is sufficient to put Coleman on notice that she felt

she was not being paid the minimum wage and was asserting her rights under the FLSA to be compensated adequately. Coleman essentially contends that Ms. Santos' complaints did not constitute protected activity because she, as a layperson, did not use the magic words that a lawyer might use to allege a FLSA claim in a legal document. *See Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (*per curiam*) ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue."). Coleman's view is an overly restrictive view of the standard; the Court declines to adopt it. Therefore, a reasonable jury could find that Ms. Santos engaged in a protected activity when she lodged her informal complaint with Coleman management.

Next, Ms. Santos must prove that she suffered an adverse employment action. Ms. Santos alleges that Coleman discharged her in retaliation for her complaints about her pay. Pl.'s Resp. at 19. As previously discussed, Ms. Santos' and Coleman's accounts of her separation from the company materially differ. If Coleman did discharge Ms. Santos, this would qualify as an adverse employment action. *See, e.g., Little*, 940 F. Supp. 2d at 478. Accordingly, there is a genuine dispute of material fact as to whether Ms. Santos was subject to an adverse employment action.

Finally, Ms. Santos must show that there is a causal link between her complaints and her alleged discharge. As stated previously, a close temporal proximity between the protected activity and the adverse employment action can be enough to find a causal link. *See Evans, supra*, 246 F.3d at 354. Coleman allegedly discharged Ms. Santos one day after she lodged her complaints with her supervisors, Regan and Bashur, regarding her insufficient pay. Pl.'s Resp. at 19. This sort of close temporal proximity is strong evidence of a causal link between Ms.

Santos' complaints and her alleged discharge. Accordingly, the Court finds that there is a genuine issue of material fact as to whether there is a causal link between Ms. Santos' protected activity and the adverse employment action Coleman took against her.

Therefore, the triable fact questions regarding the elements of the prima facie case for the FLSA retaliation claim result in the burden shifting to Coleman. Coleman still can prevail if it offers a legitimate, non-retaliatory reason for its decision, and Ms. Santos is unable to show that the reason is pretextual. *Russell, supra*, 235 F.3d at 222. However, Coleman has not offered an explanation for why it allegedly discharged Ms. Santos. Accordingly, the Court DENIES summary judgment on Ms. Santos' FLSA retaliation claim arising out of Coleman's alleged retaliatory discharge.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants Coleman World Group, LLC, Coleman American Moving Services, Inc., and Coleman American Companies, Inc.'s "Motion for Summary Judgment" (ECF No. 19) is **GRANTED IN PART AND DENIED IN PART**.

So ORDERED and SIGNED this _13th_ day of November 2017.

DAVID C. GUADERRAMA
**UNITED STATES DISTRICT JUDGE**